CASE 21—PETITION ORDINARY—OCTOBER 27.

Moore, Etc., v. Lawson. Bird, Etc., v. Lawson.

APPEAL FROM WHITLEY CIRCUIT COURT.

1. SHERIFFS—DEPUTIES—SPECULATION IN CLAIMS—PAYMENT BY DEPUTY.—Where one furnished money to a deputy sheriff for the purpose of buying county claims for him, the payment to him by the deputy sheriff of the money so advanced was in full discharge and satisfaction of the county claims bought by him, and should be treated as a payment of them by the sheriff; and the fact that part of the money so paid by the deputy sheriff was returned to him could not impart new life or vitality to the claims which had been extinguished by the previous transaction.

2. SAME.—If a deputy sheriff buys with his own money a county claim, which it was the duty of the sheriff to pay out of the county levy, it will be regarded as a payment of the claim by the deputy, for his principal, and in the settlement between them the deputy is entitled to credit therefor.

Moore, etc. v. Lawson.   Bird, etc. v. Lawson.

3. STATUTORY CONSTRUCTION.—Under the provisions of the General Statutes, chap. 27, article 3, sec. 10, that no sheriff or deputy shall purchase or speculate in any claim allowed by the court of claims of his county, such officers are not permitted to buy such claims either for themselves or for others.

K. D. PERKINS AND CRAWFORD & MASON FOR APPELLANTS.

1. The evidence clearly shows  that the Lawsons were partners in the transaction, sharing in the profits of speculation in county and State claims, and that they knew J. L. Lawson was acting in violation of the statutes, and the amended answer setting up these facts presented a complete defense and should have been permitted to be filed.   Hunt v. Knickerbocker, 5 Johnson (N. Y.), 530; Griswold v. Wellington, 16 Johnson (N. Y.), 486.

2. When the thousand dollars was paid by J. L. Lawson and G. W. Lawson, the note was extinguished, the ownership of the claims was left in J. L. Lawson.   But if G. W. Lawson was then the owner of the claims the payment of that sum extinguished the obligation and satisfied the claims.

3. Where contracts are illegal the courts will refuse to lend their aid to their enforcement, wherever or at whatever stage the illegality appears, with or without the plea of fraud.   Oscanions v. The Arms Co., 13 Otto (U. S.), 261; Lee v. Johnson, 116 U. S., 48.

J. W. ALCORN FOR MOORE.

1. The evidence shows that the claims sued for were in fact purchased by J. L. Lawson for himself, and this suit is but a subterfuge by which it is sought to make Moore liable for the debt of J. L. Lawson to G. W. Lawson.

2. This verdict is flagrantly against the weight of the evidence.

3. It was against public policy for  J. L. Lawson while acting as deputy sheriff to purchase county claims, although the purchase might have been in the name of G. W. Lawson, and G. W. Lawson if a party to the transaction, acquired no right of action in the claims.

4. The jury should have been instructed that no sheriff or deputy sheriff could buy such claims as were sued on and that the transfer of them to G. W. Lawson was void, and the court erred in refusing to so instruct the jury.

R. D. HILL FOR APPELLEE.

1. At the time the amendment was offered no evidence whatever had been given showing that J. L. Lawson was a deputy sheriff at the time he purchased the claims.

128        KENTUCKY REPORTS        [Vol. 102

Moore, etc. v. Lawson.   Bird, etc. v. Lawson.

2. Under the General Statutes, sheriffs and deputies were not pro-hibited from purchasing claims for others, and if they had been such purchases would not have been void.

R. D. HILL IN PETITION FOR REHEARING AND MODIFICATION OF OPINION.

1. By reference to the pleadings it will be seen that it is an admitted fact that the Rains' claim of four hundred dollars was purchased in October, 1888, before J. L. Lawson became deputy sheriff.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

The foregoing cases are heard together. At the August election, 1888, appellant, M. A. Moore, was elected sheriff of Whitley county, and duly qualified as such. He executed the bonds required by law, among which was a bond for the collection of the county levy of Whitley county upon which appellants, Bird, etc., were his sureties. At its October term, 1888, the Whitley County Court of Claims allowed the claims in suit, except at the April term, 1889, part of the claims were allowed, which amounted to about $40, total claims amounting to $1,016.88. Taxes were levied for the purpose of paying these, together with other claims. The plaintiff, Geo. W. Lawson, claims that he is the owner of the claims in suit. He alleges that J. L. Lawson, who was acting as deputy for Sheriff Moore, purchased the claims for him. Moore, in his answer, alleges that J. L. Lawson owned the claims, and that he had paid them to him. The reply admits that Lawson purchased the claims, but says that he purchased them as agent of the plaintiff and with his money. Such was the issue when the jury was empaneled to try the case as between Moore and the plaintiff. This suit was filed on August 4, 1893. About that date Moore endeavored to settle with his deputy, J. L. Lawson, and for some rea-

son they failed to settle, and then it was he turned these claims over to the plaintiff. From the testimony of the plaintiff and J. L. Lawson it appears that J. L. Lawson had executed his note to the plaintiff for $1,000, with 10 per cent. interest which sum, according to their testimony, was to be used by J. L. Lawson in purchasing county claims for the plaintiff. Just how long this note had been standing, and just how much interest had been paid, does not appear, but it does appear from the testimony of J. L. Lawson and of the plaintiff that on the 29th of August, 1890, the plaintiff was in need of money and Lawson, out of the public revenues, paid the plaintiff $1,000 of the note. According to the testimony of plaintiff he never knew until about the time the claims were turned over to him what claims J. L. Lawson had bought for him. It will be noticed that more than four years had elapsed from the time these claims had been allowed (they were to be paid out of the revenues of 1889) until J. L. Lawson informed the plaintiff what claims he had purchased for him. Presumably the only thing that kept the plaintiff from bringing his so-called agent to an account was the 10 per cent. which the agent was paying him for the use of money that was being invested for the principal's benefit. Indeed J. L. Lawson testifies that the claim which he obtained from the county judge, amounting to $400, was paid for with his own money. These claims originally amounted to more than $1,000, but when there were deducted certain claims which had been paid, it left less than $1,000 actually due upon the claims. It was the duty of the deputy sheriff to appropriate the county levy to the payment of the county claims, which would include the claims in suit. As-

[9]

suming that he bought these claims for the plaintiff, when he paid the plaintiff the $1,000 it was in discharge and full satisfaction of them.   The plaintiff says that during October, 1889, he found that he did not need the $1,000 and returned to J. L. Lawson something over $600 of the $1,000.   The fact that J. L. Lawson received this last sum named could not impart any life or vitality to the claims that had been extinguished by the previous transaction.   J. L. Lawson paid the plaintiff the $1,000 out of the revenues for which Moore had to account.   It was equivalent to a payment by Moore. Moore testifies that J. L. Lawson, as his deputy, owes him greatly more than the amount in suit.   This testimony is uncontradicted.

It is a most remarkable transaction that, if the plaintiff owned these claims, he would allow J. L. Lawson to hold them for three or four years, and not account to him therefor.   It is further most remarkable, as plaintiff had never paid or promised to pay J. L. Lawson anything for buying these claims for him, that J. L. Lawson was willing to execute his note and pay plaintiff 10 per cent. interest on it for the privilege of buying claims for the plaintiff.   Such a transaction could take place, and may have taken place, but it is the most improbable business transaction imaginable.   These claims, according to the testimony in this record, were never assigned to the plaintiff until they had been extinguished in the first instance by the payment which J. L. Lawson made the plaintiff, and after the sheriff had been released from any liability therefor.   The assignment was invalid.   The sureties on the bond, according to the showing which the plaintiff made in this case, are not lia-

ble for the claims in suit because when J. L. Lawson paid the plaintiff the $1,000 it was a full satisfaction of the claims so far as plaintiff was concerned, and no transaction could take place between J. L. Lawson and the plaintiff which could renew the liability of the sureties without their consent. Therefore, the court erred in sustaining a demurrer to the answer of the sureties in which they pleaded substantially the facts we have recited with reference to the payment of the $1,000 by J. L. Lawson to the plaintiff.

It is insisted that the purchase of the claim of the $400 by J. L. Lawson for himself and other claims as the agent of the plaintiff was against public policy because of the provision of section 10, article 3, chapter 27, General Statutes, which is as follows: "No county judge, county attorney (sheriff or deputy sheriff, circuit clerk or deputy and county clerk or deputy), or justice of the peace shall purchase or speculate in any claim allowed by the court of claims of his county. For any violation of this provision the person offending may be punished by indictment of the grand jury in a sum twice the amount so purchased or speculated in."

There is testimony in the record which tends to show that J. L. Lawson used the name of others with a view of evading that statute. The deputy sheriff, Lawson, admits that he bought the claim of $400 of the county judge and paid for it with his own money. In so far as this claim is concerned, it must be regarded as a payment by him for Moore, and he is entitled to a credit therefor in a settlement with Moore. It was the duty of Moore or his deputy to pay that claim, hence it must be regarded as a payment by the deputy for his principal. It is perfectly manifest that the deputy

132          KENTUCKY REPORTS.          [Vol. 102

Moore, etc. v. Lawson.   Bird, etc. v. Lawson.

sheriff could acquire no interest in that claim which he could enforce against Moore's sureties. We are of the opinion that J. L. Lawson could not buy county claims with the money of the plaintiff without violating the statute. The purpose of the statute was to prevent the officers named from speculating in county claims on their own or the account of any one else. If they are allowed to traffic in claims for any one else the law will be evaded and violated by pretending to purchase claims in the name of another, the practice in which the evidence of the record tends to prove that the deputy sheriff engaged.

The instructions of the court did not fully present the questions to the jury according to the views we have expressed, and wherein they do not agree herewith they are erroneous. The verdict of the jury is palpably against the weight of the evidence.

The judgment is reversed for a new trial and for proceedings in conformity with this opinion.

The court delivered the following response to a petition for a rehearing on December 2, 1897:

Counsel claims in the petition for rehearing that the deputy sheriff, Lawson, bought the $400 claim between the time it was allowed at the October term, 1888, and the 1st of January, 1889, when Moore was inducted into office.

Counsel submits a question to the court, which is as follows: "Now if it was purchased by J. L. Lawson before he was Moore's deputy Moore ought not to be entitled to any credit for it on the idea that it was purchased with his money."

There are two answers to the question, the first is, that if

the plaintiff, G. W. Lawson, had ever acquired any title to the claim of $400, then the deputy extinguished it when he paid the plaintiff the $1,000 out of the revenues for which Moore had to account; second, if the plaintiff never had any interest in the claim, then he is not entitled to recover on it. When J. L. Lawson purchased the claim from Rains, he was acting as deputy for the sheriff whose term expired when Moore's began.

If it be true J. L. Lawson bought this claim before Moore became sheriff, and while he was acting as deputy for the previous sheriff, it was in violation of the statute, and he could not maintain an action on it.    However, no doubt Moore will gladly give him credit for it in any settlement which he and his deputy may make.